IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

SHILMANN ROCBIT, LLC,

        Plaintiff,

v.                                        CIVIL ACTION NO. 2:16-cv-06745

AMERICAN BLASTING CONSUMABLES, INC.,

        Defendant.

MEMORANDUM OPINION & ORDER

Pending before the court are the plaintiff's Motion to Dismiss the Counterclaims [ECF No. 7], the plaintiff's Motion to Remand [ECF No. 9] to the Circuit Court of Kanawha County, West Virginia, and the defendant's Motion to Dismiss and Compel Arbitration [ECF No. 11]. The plaintiff submitted supplemental briefing on the existence of subject matter jurisdiction. Suppl. Br. [ECF No. 13]. For the reasons set forth below, the plaintiff's Motion to Remand is **DENIED**, the defendant's Motion to Dismiss and Compel Arbitration is **GRANTED,** and the plaintiff's Motion to Dismiss the Counterclaims is **DENIED** as moot. Accordingly, this matter is **DISMISSED with prejudice** and the parties are **COMPELLED** to arbitrate in South Africa under South African Law.

## I.  BACKGROUND

This dispute concerns whether subject matter jurisdiction exists under 9 U.S.C. §§ 201–208, which governs foreign arbitration awards and agreements. Further, this dispute concerns whether a particular arbitration clause is enforceable and whether the parties should be compelled to arbitrate in a foreign forum.

On or about March 4, 2014, the plaintiff, Shilmann Rocbit, LLC, and Riplog Pty Ltd. ("Riplog"), a nonparty, entered into an Exclusive Distribution Agreement ("Agreement") under which the plaintiff was to be the exclusive distributor of Riplog's manufactured "hole plugs." Notice of Removal Ex. A-2, at ¶ 5 ("Compl.") [ECF No. 1-2]. The Agreement contained a dispute resolution clause requiring all claims "aris[ing] out of or . . . connect[ed] with" the Agreement to be arbitrated in South Africa under South African law. Notice of Removal ¶ 7 [ECF No. 1]. On or about May 23, 2015, Riplog sold hole plugs to the defendant, American Blasting Consumables, Inc., Riplog's West Virginia affiliate, in violation of the Agreement. Compl. ¶ 14.

The parties are both citizens of West Virginia. Def.'s Mem. Supp. Mot. Dismiss & Compel Arb. 1 [ECF No. 12]. Riplog is a citizen of the Republic of South Africa. *Id.* Riplog and the defendant are both wholly owned subsidiaries of MTi Group Pty. Ltd, a citizen of Australia. *Id.*

On October 13, 2015, the plaintiff filed its Complaint in the Circuit Court of Kanawha County, West Virginia, alleging a claim for tortious interference and seeking "temporary and permanent restraining order[s]" against the defendant. Compl. ¶¶ 18–32. According to the Complaint, the defendant tortiously interfered

with the Agreement between the plaintiff and Riplog. Compl. ¶¶ 4–14. The plaintiff and Riplog were in ongoing "resolution methods" at the time the plaintiff filed its Complaint. Compl. ¶ 17. In the defendant's Answer, it asserted an affirmative defense that "[b]ecause the [C]omplaint arises out of and relates directly to the [Agreement], it should be dismissed or stayed for violation of that agreement's mandatory arbitration clause, and plaintiff's [sic] should be compelled to arbitrate." Answer 6, ¶ 7 [ECF No. 6]. The defendant also asserted two permissive counterclaims in its Answer. Answer 6–8, ¶¶ 8–18. Before this action was removed, Riplog assigned a partial interest in the Agreement to the defendant for collection of the plaintiff's account delinquencies. Notice of Removal ¶ 11. This partial assignment was the basis for the defendant's counterclaims.[1] Answer 7, ¶ 7. Later, after this action was removed and supplemental briefing on subject matter jurisdiction was submitted, Riplog assigned its *entire* interest in the Agreement to the defendant. Def.'s Mem. Supp. Mot. Dismiss & Compel Arb. 5.[2]

In its Notice of Removal, the defendant alleged federal subject matter

---

[1] In its Answer, the defendant asserts counterclaims for breach of contract and conversion. *See* Answer 6–8, ¶¶ 1–18. To support these claims, the defendant alleges that the plaintiff failed to make payment for delivered goods and that as an assignee of that debt, it is entitled to payment. Answer 6–7, ¶¶ 1–7. This partial assignment turns out to be relevant to the court's analysis of jurisdiction only insofar as the court determines whether the Agreement "falls under" the Convention. *See infra* p. 7.

[2] The content and timing of the later assignment conferring Riplog's entire interest has no bearing on the court's analysis of subject matter jurisdiction because "[i]n addressing the propriety of federal jurisdiction in a removal action, courts base their decision on the record existing at the time the petition for removal was filed." *See McCurdy v. Mountain Valley Pipeline,* LLC, 105 F. Supp. 3d 606, 610 (S.D. W. Va. 2015) (quoting *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 489 (S.D. W. Va. 2001)). The defendant did not amend its Notice of Removal to account for the assignment. The court *does* consider the later assignment in analyzing the enforcement of the arbitration clause, but the effect of the later assignment was only to weaken the defendant's case. Thus, any attempted gamesmanship by way of the later assignment was futile.

jurisdiction under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards Act ("Convention"), 9 U.S.C. §§ 201–208, "because the state court action relates . . . [to] an arbitration agreement governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards Act." Notice of Removal ¶ 1. Specifically, the defendant asserted that § 202 and § 205 confer removal jurisdiction because "(a) the litigation 'relates to' an arbitration agreement that falls under the Convention, (b) that agreement does not arise out of a relationship that is 'entirely between citizens of the United States,' and (c) the claims raised in state court have not been adjudicated." *Id.* at ¶4.

The plaintiff disputes that subject matter jurisdiction exists under the Convention and has moved to remand the action to state court. Mot. Remand ¶¶ 17–20 [ECF No. 9]. The defendant maintains that subject matter jurisdiction is proper in this case and has properly moved to dismiss and compel arbitration in South Africa under Rule 12(b)(3) of the Federal Rules of Civil Procedure.[3] Mot. Dismiss & Compel Arb. 1 [ECF No. 11].

## II.    DISCUSSION

The court will first address the threshold issue of whether it has subject matter jurisdiction over the case. The court will then turn to the enforceability of the arbitration clause in the Agreement.

---

[3] The Fourth Circuit has stated that a motion for dismissal based on improper venue under Fed. R. Civ. P. 12(b)(3) is appropriate when the basis is an arbitration clause because an arbitration clause is a subset of a forum selection clause. *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 365–66, 365 n.9 (4th Cir. 2012). "On a motion to dismiss under Rule 12(b)(3), the court is permitted to consider evidence outside the pleadings." *Id.* at 365–66. A plaintiff must only make a prima facie showing of proper venue in order to survive a motion to dismiss. *Id.* The court views the facts in the light most favorable to the plaintiff in assessing whether there has been a prima facie venue showing. *Id.*

4

a.  *Motion to Remand*

Under the Convention, district courts have original jurisdiction over an action or proceeding falling under the Convention, regardless of the amount in controversy. 9 U.S.C. § 203. Section 205, the Convention's removal provision, provides for removal where the subject matter "relates to an arbitration agreement or award falling under the Convention." 9 U.S.C. § 205. Removal may occur "any time before the trial [of the action or proceeding]."[4] *Id.* Ordinary removal procedure applies, except that the removal grounds need only be shown in the removal petition, they need not appear on the complaint's face. *Id.* The Convention explicitly grants district courts the power to compel arbitration and the power to confirm an arbitration award once the award is rendered. 9 U.S.C. §§ 206–207.

The traditional well-pleaded complaint rule does not apply to cases falling under the Convention. Instead, in interpreting the language of § 205, the Fifth Circuit has stated:

> This language does create one difference between the federal question jurisdiction conferred by § 205 and most other forms of federal question jurisdiction: it permits removal on the basis of a federal defense. The language that the ground for removal "need not appear on the face of the complaint" explicitly abrogates the well-pleaded complaint rule that normally keeps such defenses from serving as the basis for federal question jurisdiction. But at the same time the statute permits a defense based on an arbitration clause to serve as a grounds for removal, it also

---

[4] The plaintiff does not dispute that the defendant timely filed its Notice of Removal. Under § 205, the defendant may file its notice of removal "any time before the trial." 9 U.S.C. § 205. The ordinary rules for timeliness under 28 U.S.C. § 1446 do not apply to cases invoking removal jurisdiction under the Convention. *See Sheinberg v. Princess Cruise Lines, Ltd.*, 269 F. Supp. 2d 1349, 1351–52 (S.D. Fla. 2003); *Acme Brick Co. v. Agrupacion Exportadora de Maquinaria Ceramica*, 855 F. Supp. 163, 166 (N.D. Tex. 1994); *Dale Metals Corp. v. Kiwa Chem. Ind. Co., Ltd*, 442 F. Supp. 78, 81 n.1 (S.D.N.Y. 1977).

5

> directs us to treat such defenses the same way that we treat offensive claims. That is, just as we determine whether a plaintiff's claim arises under federal law from the complaint alone, the statute directs us to determine whether a defendant's defense arises under federal law from the "petition for removal" alone.

*Beiser v. Weyler*, 284 F.3d 665, 671 (5th Cir. 2002).

Normally, "[b]ecause removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941) (noting that federalism concerns call for "the strict construction" of the removal statute). Section 205, however, is not subject to this same restriction because Congress intended § 205 to provide for "easy removal" and to "confer jurisdiction liberally." *See Beiser*, 284 F.3d at 674; *see also Acosta v. Master Maint. & Constr. Inc.*, 452 F.3d 373, 377 (5th Cir. 2006) (describing § 205 as "one of the broadest removal provisions" and "emphasiz[ing] that the general rule of construing removal statutes strictly against removal cannot apply to [Convention] cases because in these instances, Congress created special removal rights to channel cases into federal court" (internal quotations omitted)).

The party asserting federal jurisdiction generally bears the burden of proving that the case is properly in federal court. *See McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936). Further, "[i]n addressing the propriety of federal jurisdiction in a removal action, courts base their decision *on the record existing at the time the petition for removal was filed.*"[5] *McCurdy v. Mountain Valley*

---

[5] For this reason, the court will not consider the later assignment by which Riplog assigned its entire interest in the Agreement to the defendant in deciding the Motion to Remand.

*Pipeline, LLC*, 105 F. Supp. 3d 606, 610 (S.D. W. Va. 2015) (emphasis added) (quoting *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 489 (S.D. W. Va. 2001)). Section 205 requires (1) that there be an arbitration agreement that "falls under" the Convention and (2) that the arbitration agreement "relate to" to the matter at hand. Both requirements are discussed in turn.

Taking the facts as they were at the time the Notice of Removal was filed, the Agreement squarely "falls under" the Convention. An agreement "falls under" the Convention when "(1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen." *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir. 2002); *see also* 9 U.S.C. § 202. The first three requirements are easily satisfied. The agreement is in writing, South Africa is a signatory to the Convention, South Africa is the seat of arbitration, and the parties have a commercial legal relationship. *See* Notice of Removal ¶ 8 (citing Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 [hereinafter Convention]); Notice of Removal Ex. A-1, at ¶ 16 ("Agreement") [ECF No. 1-1]; *id.* at 3. Next, because there was only a partial assignment at the time the Notice of Removal was filed, Riplog, a citizen of South Africa, was still a party to the Agreement. *See* Notice of Removal ¶ 6, 11; *see also* Agreement at 3. Thus, a party to the Agreement is not an American citizen. For these reasons, all four of the requirements are met and the Agreement "falls under" the Convention for

7

jurisdictional purposes.

The next inquiry is whether the Agreement "relates to" the subject matter of this case. I believe that it does. The Fourth Circuit has not addressed the meaning of "relates to" in § 205. However, the two circuits that have addressed the issue have held that § 205 confers broad removal jurisdiction—so broad, in fact, that a nonsignatory may compel a signatory to arbitrate the signatory's claims against it.

The Fifth Circuit opined that "whenever an arbitration agreement . . . could conceivably affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit." *Beiser*, 284 F.3d at 669. The plaintiff in *Beiser* was the sole employee of an LLC. *Id.* at 667. The plaintiff signed, in his official capacity on behalf of the LLC, an agreement with the defendant containing an arbitration clause. *Id.* The plaintiff, in his individual capacity, then brought a state court action against the defendant alleging state law claims. *Id.* The defendant removed to federal court on the grounds that the case "related to" the arbitration agreement and moved to compel arbitration. *Id.* at 666–67. The plaintiff moved to remand, arguing that he was not a party to the agreement and had signed it only in his official capacity. *Id.* at 667. The Fifth Circuit concluded that the plaintiff's claims were related to the arbitration agreement because "[d]eveloping [plaintiff's] case [would] necessarily involve explaining the scope and operation" of the agreement and the "suit at least has a 'connection with' the contracts governing the transaction out of which his claims arise." *Id.* at 669. It was conceivable that a court could pierce the corporate veil and hold the plaintiff personally responsible for the contracts. *Id.* at 670. Thus, the court held that

8

"[b]ecause the arbitration agreements could conceivably affect the disposition of [plaintiff's] claims, those agreements 'relate to' his claims, and the district court had removal jurisdiction under § 205." *Id.* Underscoring the broad scope of § 205 removal, the Fifth Circuit stated that "absent the rare frivolous petition for removal, as long as the defendant claims in its petition that an arbitration clause provides a defense, the district court will have jurisdiction to decide the merits of that claim." *Id.* at 671–72. Moreover, the Fifth Circuit referred to the "relates to" requirement as a "low bar." *Id.* at 669.

The Ninth Circuit has agreed with the Fifth Circuit's interpretation of "relates to." *See Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1137–38 (9th Cir. 2011). Speaking to the breadth of § 205, the Ninth Circuit stated that "[t]he phrase 'relates to' is plainly broad, and has been interpreted to convey sweeping removal jurisdiction in analogous statutes" and "[n]othing in § 205 urges a narrower construction." *Id.* at 1138. The court expressly rejected the proposition that a state court action could only be removed under § 205 if the parties were in privity of contract and "not[ed] that the language of § 205 does not support adding a privity requirement, and instead focuses on the relatedness of the subject matter of the action." *Goel v. Ramachandran*, 823 F. Supp. 2d 206, 217–20 (S.D.N.Y. 2011) (citing *Infuturia*, 631 F.3d at 1138). The Ninth Circuit held that "where the defendant relies on the affirmative defense of collateral estoppel regarding issues already resolved against the plaintiff in arbitration, the arbitral award 'could conceivably affect the outcome' of the case" and, therefore, removal was proper. *Infuturia*, 631 F.3d at 1138–

9

39.

Further, "'[t]he goal of the Convention,' the Supreme Court has explained, 'was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.'" *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974)). "[E]asy removal is exactly what Congress intended in § 205." *Beiser*, 284 F.3d at 674. The Supreme Court has recognized "the emphatic federal policy in favor of arbitral dispute resolution" and "that federal policy applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). The Convention and its implementing legislation "articulate a uniform policy in favor of enforcing agreements to arbitrate internationally" and "demand that courts 'subordinate domestic notions of arbitrability to the international policy favoring commercial arbitration.'" *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 390 (4th Cir. 2012) (quoting *Mitsubishi*, 473 U.S. at 639).

In considering whether the Agreement "relates to" the litigation the court must inspect both the Complaint and the Notice of Removal to determine whether removal is proper. *See Beiser*, 284 F.3d at 671. The Complaint in this case gives no grounds for removal jurisdiction, whether under the Convention or otherwise. The claims in the Complaint are state law claims and the parties are not diverse. *See* Compl. ¶¶ 1–2, 18–32. Thus, removal, if proper, must be based on a federal defense. *See Beiser*,

284 F.3d at 671. Accordingly, "the statute directs us to determine whether a defendant's defense arises under federal law from the 'petition for removal' alone." *Id.*

In its Notice of Removal, the defendant blurs two transactions (one being tortious interference with a contract between the plaintiff and Riplog and the other being collection of debt under assigned rights subject to an arbitration clause) to arrive at the conclusion that the plaintiff's claims "relate to" an arbitration agreement falling under the Convention. The defendant summarily states, "[i]n light of all this, it is plain that the . . . [A]greement 'could conceivably' affect the outcome of plaintiff's case." Notice of Removal ¶ 16. The defendant's defense in the Notice of Removal, in sum, is that the claim is subject to arbitration by the terms of the Agreement mandating that all claims "arising out of or connected to" the Agreement be sent to arbitration. *Id.* at ¶ 13. The partial assignment the defendant scrambles into the Notice of Removal turns out to be ultimately unhelpful because it is for rights wholly independent of the tortious interference claim. Still, despite the defendant's argument and irrespective of the partial assignment,[6] it is at least *conceivable* that the arbitration clause in the Agreement could affect the outcome of plaintiff's claim based on statements in the Notice of Removal. Here, as in *Beiser*, "[d]eveloping [plaintiff's] case [would] necessarily involve explaining the scope and operation" of the Agreement and the "suit at least has a 'connection with' the contracts governing

---

[6] The plaintiff asserts collusion as a defense to a finding of subject matter jurisdiction. While it is true that a collusive assignment cannot create subject matter jurisdiction, the partial assignment did not create jurisdiction here. Even without the partial assignment, the arbitration clause still "relates to" the plaintiff's claims. Thus, any argument of collusion is without merit.

11

the transaction out of which his claims arise." *Beiser*, 284 F.3d at 669. In order to determine whether the defendant tortiously interfered with the Agreement, the court would have to delve into the depths of the terms of the Agreement, especially because the crux of both the Agreement and the plaintiff's tortious interference claim is the plaintiff's exclusivity rights. Notably, unlike the plaintiff in *Beiser*, the plaintiff in this case is a signatory to the Agreement—making the connection between the Agreement and the subject matter of this case undeniably stronger than that in *Beiser*. The defense stated in the Notice of Removal, although vague, is also nonfrivolous. *See Beiser*, 284 F.3d at 671–72 ("[A]bsent the rare frivolous petition for removal, as long as the defendant claims in its petition that an arbitration clause provides a defense, the district court will have jurisdiction to decide the merits of that claim.").

Congress and the circuit courts have clearly evidenced their preference for removal and arbitration more generally by abrogating the well-pleaded complaint rule, removing the privity of contract requirement, disposing of the typical timing requirements for removal, and expressly stating that the intent of the Convention was to encourage arbitration. *See Scherk*, 417 U.S. at 520 n.15 (recognizing the intent of the Convention); *Infuturia,* 631 F.3d at 1138 (removing the privity requirement); *Beiser*, 284 F.3d at 671 (abrogating the well-pleaded complaint rule); *supra* note 4 (explaining that the traditional timeliness rule does not apply). As a result, we are left with more of an "artless" pleading standard than the "artful" pleading standard required by *Twombly* and *Iqbal. See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The defendant has at least met this very minimal threshold. For these reasons, the arbitration clause in the Agreement "relates to" the subject matter of this case.

Because the Agreement contains an arbitration clause that "falls under" the Convention and the arbitration clause "relates to" the matter at hand, the court **FINDS** that both removal jurisdiction in accordance with 9 U.S.C. § 205 and original jurisdiction under 9 U.S.C. § 203 exist in this case. Thus, the court has subject matter jurisdiction over the case.

b.  *Motion to Dismiss and Compel Arbitration*

The court must now determine whether the arbitration clause in the Agreement is enforceable.

Although § 203 grants original subject matter jurisdiction and § 205 confers removal jurisdiction, courts, including the Fourth Circuit, have interpreted § 203's "grant narrowly, limiting it in scope to actions to compel, confirm, or vacate an arbitral award." *Holzer v. Mondadori*, No. 12 Civ. 5234, 2013 WL 1104269, at *6 (S.D.N.Y. Mar. 14, 2013) (citing *Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012)); *see Aggarao*, 675 F.3d at 366–67; *Beiser*, 284 F.3d at 675 ("The district court will ordinarily remand those cases that turn out to be subject to arbitration, such that the state court will be able to resolve the merits of the dispute."); *see, e.g., Goel*, 823 F. Supp. 2d at 216–20 (remanding action to state court when party who had removed under section 205 did not seek to compel arbitration).

13

The inquiry to determine whether an arbitration agreement is enforceable under the Convention is duplicative of whether the arbitration agreement "falls under" the Convention pursuant to § 202. The Fourth Circuit has articulated the four factor test for enforceability of a foreign arbitration clause under the Convention:

> (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Aggarao*, 675 F.3d at 366 (quoting *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654–55 (9th Cir. 2009)). "When these jurisdictional prerequisites have been satisfied, a district court is obliged to order arbitration 'unless it finds that the [arbitration] agreement is null and void, inoperative or incapable of being performed.'" *Id.* at 366–67 (quoting Convention, art. II(3)).

Here, the court's analysis of the first three factors mirrors that for whether the Agreement "falls under" the Convention. All three are easily satisfied. *See supra* p. 7. However, because the court is no longer bound to look at the facts at the time of the filing of the Notice of Removal, the new contractual relationship of the parties changes the analysis for the fourth factor. At this point, Riplog has assigned its entire interest in the Agreement to the defendant. Def.'s Mem. Supp. Mot. Dismiss & Compel Arb. 4–5. As a result, the defendant has stepped into the shoes of Riplog and the contractual relationship is entirely domestic. Because all parties are American citizens, the commercial relationship must have "some reasonable relation with one

14

or more foreign states" in order for the arbitration clause to be enforceable. *See Aggarao*, 675 F.3d at 366. In determining what is sufficient for a "reasonable relationship," courts have held that two domestic parties whose only international connection is merely an *enforcement* provision abroad *is insufficient* for enforcement under the Convention. *See Jones v. Sea Tow Servs., Inc.*, 30 F.3d 360, 366 (2d Cir. 1994); *Ensco Offshore Co. v. Titan Marine L.L.C.*, 370 F. Supp. 2d 594, 597–98 (S.D. Tex. 2005) ("[T]he fact that an agreement contains arbitration and choice-of-law clauses identifying a foreign country does not in and of itself meet the fourth factor's requirement"). Courts have also decided that two domestic parties whose international connection is entirely based on *performance* abroad *is sufficient* for enforcement under the Convention. *See Freudenspring v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 340–41 (5th Cir. 2004); *Lander Co. v. MMP Inv., Inc.*, 107 F.3d 476, 481–82 (7th Cir. 1997). Here, the Agreement calls for enforcement abroad by mandating dispute resolution to take place in South Africa under South African law and performance abroad by requiring delivery of the product in South Africa and payment to a South African Bank. *See* Agreement ¶¶ 16, 18, 5.1, 6.3. Given that this relationship envisages *both* performance *and* enforcement abroad, the court **FINDS** that there is some reasonable relation with South Africa. Therefore, the Agreement will be enforceable if no defense exists.

The plaintiff asserts, as a defense to enforceability, that the arbitration clause in the Agreement is "'null and void' because [the defendant] was never capable of performing its obligations under the [A]greement according to its terms." Pl.'s Resp.

Def.'s Mot. Dismiss & Compel Arb. 7 [ECF No. 21]. At the arbitral-enforcement stage, however, the Convention's "null and void" clause only applies in situations constituting standard breach-of-contract defenses such as fraud, mistake, duress, and waiver. *See Aggarao*, 675 F.3d at 372–73 (citing *Lindo v. NCL (Bah.), Ltd.*, 652 F.3d 1257, 1276–77 (11th Cir. 2011)) (recognizing this interpretation of the "null and void" clause articulated by the Eleventh Circuit in *Lindo* as correct in the face of contrary Eleventh Circuit case law). Thus, the plaintiff's defense fails insofar as it is an attempt to assert a "null and void" defense. The plaintiff's defense also fails insofar as it is an attempt to assert an "incapable of being performed" defense most obviously because the plaintiff admits that the defendant "could have hypothetically performed under the Agreement." Pl.'s Resp. Def.'s Mot. Dismiss & Compel Arb. 8. Thus, no defense exists to enforcement of the arbitration agreement. For this reason, the court **FINDS** that the arbitration clause in the Agreement is enforceable.

### III. CONCLUSION

Finding that the subject matter jurisdiction in this case exists, that the arbitration clause at issue is enforceable, and that no defense exists as to enforceability, the plaintiff's Motion to Remand [ECF No. 9] is **DENIED**, the defendant's Motion to Dismiss and Compel Arbitration [ECF No. 11] is **GRANTED**, and the plaintiff's Motion to Dismiss the Counterclaims [ECF No. 7] is **DENIED as moot**.

The Fourth Circuit has opined that in cases falling under the Convention, "dismissal is a proper remedy when all of the issues presented in a lawsuit are

arbitrable," *Aggarao*, 675 F.3d at 366–67 (quoting *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001)). Finding that all claims are arbitrable in this case and having dispensed with all issues, the parties are **COMPELLED** to arbitrate in accordance with the Agreement and this case is **DISMISSED with prejudice**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: October 4, 2016

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE